**In re COUNTRY JUNCTION, INC. et al., Debtor and Bankrupt.**

**COUNTRY JUNCTION, INC., et al., Plaintiffs-Appellees,**

v.

**LEVI STRAUSS & CO., et al., Defendants-Appellants.**

**Civ. A. No. A–83–CA–674.**

United States District Court,
W.D. Texas,
Austin Division.

June 25, 1984.

David S. Gragg, Groce, Locke & Hebdon, Donald R. Taylor, Akin, Gump, Strauss, Hauer & Feld, San Antonio, Tex., Shein-feld, Maley & Kay, Houston, Tex., Leo Fox, New York City, for plaintiffs-appellees.

Ted Cackowski, Austin, Tex., Kahn & Kahn, St. Louis, Mo., John M. Tutt, San Antonio, Tex., for defendants-appellants; McDuff & Damron, Austin, Tex., of counsel.

## MEMORANDUM OPINION

JACK ROBERTS, Senior District Judge.

This case is before the Court on appeal from bankruptcy court. Having reviewed the record on appeal, the briefs of the parties, and the pleadings on file, the Court finds that the facts and legal arguments are adequately presented in the briefs and record and that its decision would not be significantly aided by oral argument. *See* Bankr.R. 8012. The Court affirms the decision of the Court below.

The appellant, Levi Strauss & Co., appeals from an order of the bankruptcy court granting the appellees recovery of a preference under section 547 of the Bankruptcy Code. The appellees Country Junction, Inc., and Country Legend, Inc., are corporate affiliates and filed for relief under Chapter 11 of the Bankruptcy Code on December 11, 1981. In April 1982, Junction and Legend filed an adversary action in bankruptcy court to recover payments made by them to Levi between September 16 and November 25, 1981. The bankruptcy court subsequently consolidated all causes of action that the affiliated corporate plaintiffs had against the defendants in the adversary action. After a trial, the bankruptcy court entered its opinion and order, awarding Junction and Legend $415,291.

Levi raises several issues in this appeal, challenging the decision of the bankruptcy court. First, Levi contends that the bankruptcy court lacked jurisdiction because the proceeding was a "related" civil proceeding under 28 U.S.C. § 1471(b) and (c) and under section 241(a) of the Bankruptcy Reform Act of 1978. Second, Levi argues that if this Court should determine that the bankruptcy court properly had jurisdiction, the case must be remanded to the bankruptcy court for additional findings of fact. Third, Levi contends that the bankruptcy court erred in striking its jury demand and requests a new trial, by jury, in district court. Fourth, Levi submits that the bankruptcy court erred in basing its decision in part on the consolidated financial data of Legend and Junction in the absence of substantive consolidation in the main proceeding.

Last, Levi challenges several findings of fact and conclusions of law made by the bankruptcy court. The specific issues concern the validity of the notes and guaranties executed by Legend and Junction to Levi, whether the two corporations were alter egos, the nature of certain funds of Junction, the extent of the secured debt of Junction, the insolvency of Junction and Legend, and the result had Legend been liquidated under Chapter 7.

## PRELIMINARY ISSUES

*Standard of Review.* Bankruptcy Procedure Rule 8013 provides,

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard

shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

A district court must accept findings of fact made in a bankruptcy proceeding unless they are clearly erroneous. *Wilson v. Huffman (In re Missionary Baptist Foundation of America)*, 712 F.2d 206 (5th Cir. 1983) (citing *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)). The burden of establishing a clearly erroneous determination is a stringent one; to be convinced, a reviewing court must have a definite and firm conviction that a mistake has been committed. *In re Missionary Baptist*, 712 F.2d at 209 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). "The test for the district court ... is not whether a different conclusion from the evidence would be appropriate, but whether there is sufficient evidence in the record to prevent clear error in the trial judge's findings." *Highland Village Bank v. Bardwell (In re Bardwell)*, 610 F.2d 228, 230 (5th Cir.1980).

The rigorous standard applied to findings of fact does not, however, constrain appellate review of the bankruptcy court's conclusions of law, which are subject to plenary review. *In re Missionary Baptist*, 712 F.2d at 209. Moreover, "[w]hen a finding of fact is premised on an improper legal standard, or a proper one improperly applied, that finding loses the insulation of the clearly erroneous rule." *Id.* Thus, the district court "must independently determine the correctness of the ultimate legal conclusion adopted by the bankruptcy judge on the basis of the facts found." *Borg-Warner Acceptance Corp. v. Fedders Financial Corp. (In re Hammons)*, 614 F.2d 399, 403 (5th Cir.1980).

Levi argues that the foregoing standard of review does not apply to this case because it was tried by the bankruptcy court during the period from December 25, 1982, to July 31, 1983, when this Court's Emergency Rule was in effect. The Emergency Rule provided, in paragraph (e)(2)(B), that "[i]n conducting review, the district judge ... need give no deference to the findings of the bankruptcy judge."

■ After reviewing the relevant statutory and case law, however, the Court concludes that the standard of review in this case is governed by the new Bankruptcy Rules, which were prescribed by the Supreme Court pursuant to 28 U.S.C. § 2075. The Supreme Court order prescribing the Rules stated that they "shall take effect on August 1, 1983, and shall be applicable to proceedings then pending ...." 11 U.S.C.A. Bankr.Rules & Official Forms Rules 1 to 7000 at xiii (West 1984). Furthermore, the Supreme Court Bankruptcy Rules prevail over any conflicting local rules adopted by a district court, including the Emergency Rule in question here. *Frank v. Arnold (In re Morrissey)*, 717 F.2d 100, 104 (3d Cir.1983).

The bankruptcy court order that Levi is appealing was entered on August 8, 1983. Levi's notice of appeal was timely filed pursuant to Rule 8002 on October 13, 1983. Even though this case was pending before the bankruptcy court before August 1, 1983, and was governed by the Emergency Rule at that time, the new Bankruptcy Rules have been in effect for the entire time this case has pended before this Court. Accordingly, the new Bankruptcy Rules govern the practice and procedure in this case on appeal. *See Philadelphia Consumer Discount Co. v. Commercial Credit Business Loans, Inc. (In re Philadelphia Consumer Discount Co.*, 37 B.R. 946 (D.C.E.D.Pa.1984); *Davis v. Lewis*, 36 B.R. 88 (D.C.E.D.Ark.1984); *Commodity Credit Corp. v. Tarnow (In re Tarnow)*, 35 B.R. 1014 (D.C.N.D.Ind.1983).

■ *Jurisdiction of the Bankruptcy Court.* Levi has challenged the jurisdiction of the bankruptcy court in this action. Junction and Legend jointly filed a complaint against Levi, seeking recovery of transfers on the grounds that the transfers were voidable preferences under section 547 of the Bankruptcy Code. Levi argues first that the attempt to *recover* a preference, as opposed to merely *avoiding* a pref-

erence, took this action beyond the summary jurisdiction of the bankruptcy court. Second, Levi notes that since it had not filed a claim against Legend, Legend's action against it constituted a "related proceeding" in which the bankruptcy court did not have jurisdiction to enter final orders. Emergency Rule ¶ (d)(3)(B).[1] Levi therefore asserts a right to a jury trial in district court.

As to Levi's first contention, the Court holds that the bankruptcy court properly had plenary jurisdiction to hear this case. While the former Bankruptcy Act expressly provided that plenary actions to recover preferences could not be brought before the bankruptcy court without the consent of the transferee, there is no similar provision in the Bankruptcy Code. *See* Bankruptcy Act of 1898, ch. 541, § 60(b), 30 Stat. 562, *repealed by* Pub.L. No. 95–598, Title IV, § 401(a), 92 Stat. 2549. Therefore, while Levi may be correct in arguing that under the Bankruptcy Act a party who had not presented a claim in a bankruptcy proceeding had a right to a plenary proceeding in federal or state court, *see Katchen v. Landy*, 382 U.S. 323, 336, 86 S.Ct. 467, 476, 15 L.Ed.2d 391 (1966), its argument is irrelevant to this action, which is governed by the Bankruptcy Code.

■ As to Levi's second contention, the Emergency Rule defined a related proceeding as "those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or a state court." Emergency Rule ¶ (d)(3)(A).

An action to recover a preference arises solely under the federal bankruptcy laws and cannot be brought in the absence of a petition in bankruptcy. Such actions therefore do not come within the definition of a related proceeding as set forth in the Emergency Rule. More important, it therefore also does not violate the rule of the *Marathon* case, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598, to hold that such an action is within the jurisdiction of the bankruptcy court. *See Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1581–82 (2d Cir. 1983).[2]

Levi argues further, however, that it had a right to a jury trial in this action and that it timely demanded a jury trial. If Levi is correct, the bankruptcy court did not have proper jurisdiction to hear this case, because the Emergency Rule expressly prohibited bankruptcy judges from conducting jury trials. Emergency Rule ¶ (d)(1)(D).

■ Levi does not state whether its asserted right to a jury arises from the seventh amendment or from statute. In regard to a Constitutional right to a jury trial, the Supreme Court noted in *Katchen*, 382 U.S. at 336–37, 86 S.Ct. at 476, "as the proceedings of bankruptcy courts are inherently proceedings in equity, . . . there is no Seventh Amendment right to a jury trial for determination of objections to claims . . . ." The fact that a money judgment is entered in a case does not change the nature of the case from an action in equity to an action in law within the ambit of the seventh amendment.[3] *Pereira v. Checkmate Communications Co., Inc. (In re*

---

**1.** Levi concedes that it submitted itself to the summary jurisdiction of the bankruptcy court in the Legend case because it had filed a proof of claim against Legend. But it argues that its filing that claim did not subject it to the jurisdiction of the court in the Junction action and that in any event, the attempt by Junction and Legend to recover a preference invokes the plenary jurisdiction of the bankruptcy court.

**2.** The Court notes also that the Emergency Rule expressly stated that related proceedings did not include "orders to turn over property of the estate [and] proceedings to set aside preferences . . . ." Emergency Rule ¶ (d)(3)(A). Section 550 of the Bankruptcy Code authorizes the trustee to recover any property to the extent that a trans-

fer is avoided. Section 551 provides that any transfer avoided under section 547 is preserved for the benefit of the estate. Since section 541 provides that the estate includes any interest in property, wherever located, that is recovered under section 550 or preserved under section 551, orders to recover an avoidance are equivalent to "orders to turn over property of the estate." Thus, the order of the bankruptcy court in this action was one of the orders listed in the Emergency Rule as not constituting a related proceeding.

**3.** By its terms, the seventh amendment right to a jury trial applies only to "Suits at common law."

*Checkmate Stereo & Electronics, Ltd.),* 21 B.R. 402, 408 (D.C.E.D.N.Y.1982).

The statutory right· to a trial by jury under the Bankruptcy Code is governed by 28 U.S.C. § 1480(a). That section provides in effect that where a right to a jury trial existed under the old Bankruptcy Act, that right remains undiminished under the new Bankruptcy Code. Thus, it is necessary to determine what rights to a jury existed under the Bankruptcy Act in a case such as this one.

Under the Bankruptcy Act, the right to a jury trial depended primarily on the distinction between the plenary and summary jurisdiction of the bankruptcy court. 1 *Collier on Bankruptcy* ¶ 3.01(4)(a) (L. King 15th ed. 1979). Parties to summary proceedings had a right to a jury trial only in specified circumstances.[4]

■ The Court concludes that Levi does not have a right to trial by jury in this case and bases its conclusion on two separate lines of reasoning. First, the Court recognizes that had the trustee for Junction filed this action under the Bankruptcy Act, the summary jurisdiction of the bankruptcy court would have been unavailable because Levi had not filed a claim against Junction. The trustee therefore would have had to bring the action as a plenary proceeding, with the potential for the right to trial by jury. However, as noted above, the Bankruptcy Code does not provide a right to a plenary proceeding in such a case; rather, these cases are now to be adjudicated as a summary proceeding— namely, one involving a controversy over property in the constructive possession of the bankruptcy court. Since there was no right to a jury trial in a summary proceeding under the old Bankruptcy Act, there is now no right to one under the new Bankruptcy Code.

Second, the Court notes that even if Levi were still entitled to a plenary proceeding

to resolve this dispute, the trustee's action to avoid and recover a preference is an action in equity, not law. "It is not an action seeking damages for an act complained of, but rather, seeks the return of the *res* for a more equitable distribution." *Boroff v. Carriero (In re Carriero),* 21 B.R. 132, 134 (Bkrtcy.D.Mass.1982). Therefore, under the Bankruptcy Act, Levi would not have been entitled to a trial by jury. Again, it follows that under 28 U.S.C. § 1480(a), Levi is not entitled to a trial by jury in this action under the Bankruptcy Code.[5] The Court therefore concludes that the bankruptcy court properly had jurisdiction over the entire action.

■ *Joinder and Consolidation of Claims.* Levi challenged the bankruptcy court's joinder of the claims of Junction and Legend. Initially, the trustee for Junction and Legend filed a single claim for relief on behalf of both corporations. Subsequently, the bankruptcy court granted the plaintiffs' motion to consolidate all claims that either of them had against Levi.

Bankruptcy Rule 7020 provides, through Federal Civil Procedure Rule 20, that plaintiffs may join in one action whether they assert their right to relief jointly, severally, or in the alternative. The joinder of parties is proper if there are both common questions of law or fact and the rights asserted arise out of the same transaction or series of transactions. Moreover, under the Federal Rules of Civil Procedure, " 'joinder of claims, parties and remedies is strongly encouraged.' " *Russo v. Bache Halsey Stuart Shields, Inc.,* 554 F.Supp. 613, 616 (N.D.Ill.1982) (quoting *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 724, 86 S.Ct. 1130, 1137, 16 L.Ed.2d 218 (1966)). The claims of Junction and Legend arise out of the same series of transactions and involve common questions of law and fact, and joinder was therefore proper under Rule 7020.

---

**4.** The right to trial by jury in summary proceedings was preserved only in dischargeability of debt proceedings under 11 U.S.C. § 35(c) and in disputed involuntary petitions under 11 U.S.C. § 42. 1 *Collier on Bankruptcy* ¶ 3.01(4)(a) at 3–84.6, 3–88 (L. King 15th ed. 1979).

**5.** Since the Court holds that Levi did not have a right to a jury trial, it is unnecessary to determine whether Levi timely presented its demand for a jury under Federal Civil Procedure Rule 38.

The subsequent "consolidation" of the claims of the plaintiffs was proper under Federal Civil Procedure Rule 17 and Bankruptcy Rule 7017. Levi's objection that the plaintiff corporations are separate entities misses the point: "An identity of parties is not required; a substantial identity of issues is." *Delta Coal Program v. Libman*, 554 F.Supp. 684, 690–91 (N.D.Ga.1982). The claims of Junction and Legend involve a substantial identity of issues and the consolidation of their claims was proper.

■ *Sufficiency of Findings of Fact and Conclusions of Law.* Levi contends that the findings of fact and conclusions of law made by the bankruptcy court did not meet the requirements of Bankruptcy Rule 7052, which makes Federal Civil Procedure Rule 52 applicable to bankruptcy proceedings. As the Fifth Circuit has stated, "The purpose of F.R.Civ.P. 52 is to afford the appellate court a clear understanding of the basis of the trial court's decision." *Ruiz v. Estelle*, 679 F.2d 1115, 1133 n. 49 (5th Cir.), *modified on rehearing*, 688 F.2d 266 (5th Cir.1982), *cert. denied*, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983).

The bankruptcy court separately listed its findings of fact and conclusions of law and set forth a clear statement of the basis of its decision. That statement is sufficient to give this Court a "clear understanding of the analytical process by which ultimate findings were reached and to assure [it] that the trial court took care in ascertaining the facts." *Id.* at 1133.

### AVOIDING A PREFERENCE

*Section 547(b) Requirements.* Levi's central challenge to the bankruptcy court's order is that the court erred in holding that the payments in question constituted a preference under section 547 of the Bankruptcy Code. Under section 547(b), a trustee may avoid as a preference any transfer of a debtor's property to a creditor that is for an antecedent debt, made while the debtor was insolvent, and made within 90 days of the filing a petition for bankruptcy,

and that enables the creditor to receive more than it would have received under a chapter 7 liquidation and distribution. Levi contends, among other things, that (1) the funds it received had been part of Legend's estate, not Junction's, (2) Legend was not insolvent at the time of the transfers, and (3) there is no evidence to determine what the distribution under chapter 7 would have been.

To resolve these issues, this Court must determine whether the bankruptcy court's findings of fact sufficiently support its conclusion that the requirements for avoiding a preference were met in this case. The bankruptcy court found that Junction and Legend had executed, as comakers, two notes to Levi. The notes were executed in connection with an agreement between the parties to carry forward the outstanding balances of Junction and Legend. The first note was executed on June 19, 1981, in the amount of $1,000,000. On September 14, 1981, the second note was executed in the amount of $221,761.52 upon the resolution of a dispute over the remainder of the amount owed as of June 19, 1981. In the 90-day period preceding the filing of the chapter 11 petition, six payments totalling $415,291.74 were made on the two notes. All payments were made from accounts held in Junction's name and under its exclusive control. Finally, the bankruptcy court found that during this period, Junction was insolvent.

The evidence supported the foregoing findings, and the bankruptcy court properly concluded that the notes made Levi a creditor of Junction's and that the payments were made for an antecedent debt.[6] *See* Tex.Bus. & Com.Code Ann. § 3.118(5) (Vernon 1968); *Caldwell v. Stevenson*, 567 S.W.2d 278 (Tex.Civ.App.—Austin 1978, no writ). Levi, however, contends that Junction held the money in constructive trust for Legend and that therefore Junction did not have the requisite property interest in the money it paid to Levi. Levi thus concludes that the initial requirement that there be a "transfer of property of the

---

**6.** Levi contends that the notes are invalid. But since the notes were executed mainly to evidence the companies' liability on their accounts payable, Levi is a creditor to Junction and Legend, regardless of the validity of the notes.

debtor" was not met. *See I-T-E Circuit Breaker Co. v. Holzman*, 354 F.2d 102 (9th Cir.1965); 4 *Collier on Bankruptcy* ¶ 547.-08(2).

■ *Requisites of a Constructive Trust.* "A constructive trust is an equitable remedy created by the courts to prevent unjust enrichment." *Hudspeth v. Stoker*, 644 S.W.2d 92, 93 (Tex.App.—San Antonio 1982, no writ). An express agreement is not necessary to create a constructive trust. *Omohundro v. Matthews*, 161 Tex. 367, 341 S.W.2d 401, 405 (1960). "It is imposed by law because the person holding the title to property would profit by wrong or would be unjustly enriched if he were permitted to keep the property." *Id.*

In order to justify imposing a constructive trust on property, fraud, either actual or constructive, must be present. *Talley v. Howsley*, 142 Tex. 81, 176 S.W.2d 158 (1943). Actual fraud usually involves a dishonest purpose or an intent to deceive, while constructive fraud usually involves a breach of trust or confidential relationship. *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex.1964). Confidential relationships arise not only from technical fiduciary relationships, but also from partnerships, joint ventures, and other informal relationships. *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex.1962); *see also Harris v. Sentry Title Co., Inc.*, 715 F.2d 941 (5th Cir.1983), *petition for cert. filed sub nom. Ward v. Sentry Title Co., Inc.*, — U.S. —, 104 S.Ct. 2679, 81 L.Ed.2d 874 (1984).

■ A second requirement of the remedy is that the beneficiary of the trust "must trace the equitable right asserted in an unbroken line to the property he seeks to impress with the trust." *Peirce v. Sheldon Petroleum Co.*, 589 S.W.2d 849, 853 (Tex.Civ.App.—Amarillo 1979, no writ). But even when tracing to specific trust funds is impossible because the trustee has commingled the trust funds with other funds, the right is not necessarily defeated if the beneficiary can trace to the commin-

gled fund. *Logan v. Logan*, 138 Tex. 40, 156 S.W.2d 507 (1941). If the commingling of the funds was wrongful, the burden is on the trustee to distinguish his funds from the trust funds; however, if there was no wrongful commingling, the trust beneficiary must establish the nature and extent of the beneficial interest in the commingled fund. *Id.* at 510–11.

■ In this case, sales proceeds from Junction stores and Legend stores were forwarded, pursuant to a financing agreement, directly to ITT Commercial Credit, which would then remit the funds to operating accounts held in Junction's name.[7] Although the funds from the stores were indiscriminately commingled in the accounts, intercompany accounts were maintained to keep track of the ownership of the funds. Levi has not contended that the commingling of funds in this case was wrongful, and under Texas law it has the burden of establishing the extent of its beneficial interest in the Junction accounts.

After examining the record, the Court concludes that the bankruptcy court correctly held that the funds used to make the preference payments were the property of Junction. First, Levi presented evidence based on an accountant's analysis of the intercompany accounts. On cross-examination, Levi's expert witness testified that during the entire 90-day period preceding the filing, the intercompany account showed a net amount due from Legend to Junction. Thus it appears that even if Legend could trace its beneficial interest in the funds held by Junction, it was a net debtor to Junction, not a net creditor, during the relevant period. There were thus no net funds in the accounts to which a constructive trust could be applied.

Second, regardless of the net balance recorded in the intercompany account, Levi did not demonstrate that the essential element of fraud—actual or constructive— was present in Junction's management of the intercompany account or in the pay-

---

**7.** The two corporations had common management personnel and shared headquarters and warehouse facilities in Austin, Texas. Legend's bank accounts and purchase accounts were closed when it was acquired by Junction. Junction ordered all merchandise for its own stores and Legend's and paid for it out of its bank accounts.

ments it made to Levi. And even if Levi could have shown that the payments were improperly recorded against the "Junction" note instead of the "Legend" note, that would not be sufficient to establish a constructive trust over the money paid out of the account. At best, an improper credit on the companies' books would only establish a claim by Legend against Junction. But even more important, since the two companies were comakers on the notes and therefore jointly and severally liable on each note, any payment that Junction made on either note reduced the liabilities of Legend as well as its own. Thus, Levi can hardly contend that Junction's payments to Levi were in themselves detrimental to Legend. As a result, there was no constructive trust created for Legend's benefit.

The Court therefore concludes that the money in the accounts was the property of Junction. It only remains to determine whether the bankruptcy court properly held that the payments to Levi enabled it to receive more than it would have received in a chapter 7 liquidation.

■ *Distribution Under a Chapter 7 Liquidation.* The bankruptcy court found that had this been an insolvency case under chapter 7, Levi would have received nothing because of the large amount of secured debt that would have depleted the money available after paying priority claims. Junction presented evidence of the amount of money that would have been available for distribution to all the creditors. According to the testimony, no money would have been available to unsecured creditors such as Levi. It was therefore not clearly erroneous for the bankruptcy court to hold that the payments to Levi enabled it to receive more than it would have received in a chapter 7 liquidation.[8]

*Summary.* All elements of section 547(b) having been established, the bankruptcy court properly held that the transfers constituted avoidable preferences. Levi's other arguments, concerning improp-

er consolidation of the companies, treatment of them as alter egos, and the insolvency of Legend are thus rendered moot. Accordingly,

The decision of the bankruptcy court is **AFFIRMED.**

■■■

---

8. Levi contends that ITT had not properly perfected its claim and therefore should not be considered a secured creditor. The testimony demonstrated that unsecured creditors would have received nothing even if ITT was not considered a secured creditor.